PATRICK FAGAN, APPELLEE, V. KATE FAGAN, APPELLANT.

FILED OCTOBER 8, 1908. No. 15,297

1. Divorce: PLEADING. The allegations contained in the eighth paragraph of the petition set out in the opinion, when considered in connection with preceding paragraphs of the petition which allege specific acts of personal violence and cruel treatment, held a sufficient statement of a cause of action for extreme cruelty, and sufficient to overcome any previous condonement.

2. Evidence examined and set out in the opinion, held sufficient to sustain the findings and judgment of the district court.

APPEAL from the district court for Nance county: CONRAD HOLLENBECK, JUDGE. Affirmed.

John J. Sullivan, Louis Lightner and C. J. Phelps, for appellant.

W. T. Critchfield and Rose & Shields, contra.

FAWCETT, C.

Plaintiff's petition alleges extreme cruelty, and prays for an absolute divorce. Defendant's answer denies the allegations of plaintiff's petition, alleges extreme cruelty on plaintiff's part, and prays for a divorce *a mensa et thoro*, and for separate maintenance. The reply denies all of defendant's allegations of cruelty, alleges that plaintiff is possessed of property and money to the amount of about $5,000, and that he has already paid plaintiff $4,200 in money. The trial below resulted in a general finding in favor of plaintiff on the question of extreme cruelty, and that defendant had received her just proportion of plaintiff's property, and was not entitled to any further sum as alimony. A decree was entered upon the findings, divorcing the parties absolutely, quieting the title in the respective parties to the property held by each, and denying defendant any alimony. From the decree thus entered, this appeal is prosecuted.

Defendant contends that plaintiff's petition does not state a cause of action, and that the decree of the district court is not sustained by sufficient evidence. In support of her first contention, defendant argues that the specific acts of cruelty set out in the fourth, fifth, sixth and seventh paragraphs of plaintiff's petition were all condoned by plaintiff, and that the petition must therefore stand or fall upon the eighth paragraph thereof. There is no plea of condonment in the answer, but, even if there were, we think defendant's contention must fail. The eighth paragraph is as follows: "On or about May 1, 1906, the said defendant called plaintiff 'an old gray-headed devil' and 'blind fool,' and applied to plaintiff other vulgar and profane language too indecent to be here set forth, and at the same time told plaintiff she would not cook for him any longer, and drove plaintiff from his home." We think that, taken in connection with the other allegations in the petition, the acts of defendant set out in the eighth paragraph were sufficient to overcome

any condonement contended for by defendant, and to reinstate and make effective all the other allegations of extreme cruelty.

There is no corroboration in the record of defendant's allegations and testimony as to plaintiff's cruelty beyond the fact that two or three witnesses testify to having seen defendant working in the field shocking grain, helping to load hay, and other similar work, and assisting in taking care of the stock and doing chores around the house and barn, and that plaintiff had told two or three of her neighbors that defendant was lazy. This testimony was clearly insufficient to support the allegations of defendant's cross-petition. The evidence introduced by plaintiff shows that the defendant is a very passionate woman; that on one occasion she struck him in the face with a fork; on another she assaulted him with a chair; on another she made an assault upon him in the public street in the presence of other people; that she was habitually calling him "a gray-haired old devil," "blind fool," and "dirty bastard," and other names of a similar character; that, when she was angry, she would break up the dishes and other household utensils. The fork episode is explained by defendant by her testimony that on one occasion she was carrying some dishes from the kitchen to the dining room, and also had a fork in her hand; that plaintiff said something which angered her, and she threw the dishes upon the floor; that plaintiff took hold of her and swung her around, and that in swinging her around the fork struck him in the face, but that she had no intention of inflicting such injury upon him. Plaintiff is corroborated as to the chair episode by a young man who was working for him and living in the family at the time. He is also corroborated by this young man as to the ugly names applied to him by the defendant, above set out. One witness testifies that one Sunday morning, after a tilt between plaintiff and defendant, defendant refused to ride to church in plaintiff's buggy, and got into the buggy in which the witness and his mother

were going to the same church; that during the trip his mother asked defendant why she married the plaintiff, and her answer was that she married him for a home; that there was another man she thought more of than she did of him, but that he had property, and she married him for a home, or words to that effect. Defendant admits talking with the mother of the witness on that occasion about their former beaux, but claims they were doing so simply in a joking way. On one occasion, a number of years prior to the final separation, plaintiff applied for a divorce, but friends intervened, and a mutual friend told him that he thought if he would give his wife some of the property in her own name everything would be all right. Plaintiff testifies that defendant promised him that, if he would deed her part of the property, she would do better, and would make him a good wife; that he thereupon deeded her one-half of all the land he at that time owned. They went together again, but things were no better. Subsequently another separation occurred, and defendant filed an application for divorce. Plaintiff again, in his endeavor to adjust matters so that they might live together, paid defendant $600 in money, and gave her his promissory note for $600, which note he subsequently paid, and they resumed their former relations; but their cat-and-dog life seems to have continued down to the time of the final separation. At or shortly after their final separation they sold the land, of which they each owned half, for $7,000; defendant receiving $3,600 of the money, and plaintiff $3,400. It appears, therefore, that defendant received $3,600 from the sale of the land, and $600 in cash at the time of the settlement of her divorce proceedings; making the $4,200 set out in plaintiff's reply. In addition to that, the note for $600 was subsequently paid, so that, as a matter of fact, defendant has received from plaintiff $4,800. At the time the parties were married plaintiff was worth about $3,000 all told, while defendant was penniless. We think in the light of all of the facts, as shown by the record, the judgment of the district court

was right, both in granting the plaintiff a divorce, and in refusing the defendant alimony.

If there seemed to be any possibility of these people living together again as husband and wife, we might be disposed to take a different view of the case; but defendant admitted upon the stand that she has no desire to live with plaintiff, and plaintiff testifies that it is impossible for them to live together again. There seems to be much force in the contention of plaintiff's counsel that defendant's chief desire is to get as much money as possible out of plaintiff without performing the duties of a wife in return therefor. We think she has had all that she is entitled to, and that plaintiff ought not to be required to support her any longer.

We recommend that the judgment of the district court be affirmed.

CALKINS and ROOT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.